**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

CURTIS MOODY,

               Petitioner,     :     Case No. 3:18-cv-139

    - vs -                          District Judge Walter H. Rice
                                       Magistrate Judge Michael R. Merz

TOM SCHWEITZER, Warden,
  Lebanon Correctional Institution

                                   :

               Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

On Order of District Judge Rice (ECF No. 37), this habeas corpus case is before the Magistrate Judge for reconsideration in light of Petitioner's Objections (ECF No. 36) to the Report and Recommendations (the "Report," ECF No. 27).

**Ground One: Improper Photo Identification**

In his First Ground for Relief, Moody claims he was denied due process of law and a fair trial when the trial court failed to suppress the results of the pretrial photo identifications. This claim was considered on the merits by the Second District Court of Appeals; its decision is quoted in full in the Report (ECF No. 27, PageID 1624-29, quoting *State v. Moody*, 2nd Dist. Montgomery No. 26926, 2016-Ohio-8366 (Dec. 23, 2016), appellate jurisdiction declined, 149 Ohio St. 3d 1421 (2017)). Because the Second District reasonably applied the correct United States Supreme Court precedent, the Report concluded its decision was entitled to deference under 28 U.S.C. 2254(d)(1).

1

The Report specifically found Moody's "argument rests on the claim that a person named D.W. was identified as the shooter by witness Charles Dozier, but D.W.'s photograph was not included in subsequent photo arrays shown to other witnesses who identified Moody. That does not make any of the arrays unconstitutionally suggestive." (ECF No. 27, PageID 1630).

In his Objections, Petitioner again relies on the omission of D.W.'s photograph from all of the photo spreads except the first one. He accuses Detective Cope of "cherry picking" the photographs used in the subsequent photo spreads (ECF No. 36, PageID 1662), and essentially claims that the Constitution required that the photograph of D.W. be presented to eyewitnesses Stanley Wilson, Raymond Nicholson, Walter Jackson, and Gary Crosby. *Id.* at PageID 1663.

Moody points to no facts in the record which support his allegation of "cherry picking." Instead, the Second District reiterated the trial court evidence that Detective Thomas Cope used a software program called JusticeWeb to generate photographs to have the witnesses compare with Moody's photo and the program generated hundreds of possibilities for the five "filler" slots in the photospreads. *State v. Moody, supra,* at ¶¶ 16, 19.

Moody also points to no facts in the record which conflict with the state courts' findings that the photospreads were not unduly suggestive. Possible ways in which they might have been would be if the filler photographs were of persons differing significantly from Moody in age, height, weight, facial features, or hairstyles. The Second District found as a matter of fact that that did not happen. *State v. Moody, supra*, at ¶¶ 33-34. The Second District also found the photospreads were submitted to the witnesses by blind administrators, i.e., police officers who did not know that Moody was the person Detective Cope suspected of the shooting. *Id.*

Moody's claim seems to be that if the photograph of D.W. had been included in the subsequent photospreads, eyewitnesses Wilson, Nicholson, Jackson, and Crosby would have

identified D.W. as the shooter, thereby exonerating Moody. But this claim is purely speculative. We can infer from the fact that JusticeWeb found D.W. to be similar in appearance to Moody that other witnesses might have picked him, but there is no evidence of record indicating D.W. would have been a viable suspect for this crime. That is, we have no idea whether he was ever anywhere near the crime scene, much less at the time of the shooting. Indeed, we have no idea how large a database JusticeWeb draws from – D.W. might be a resident of New York, for example.

The test under the Constitution is not whether a particular photospread might have been more favorable to a defendant than the one actually used. Rather, the test is whether the photospread actually used was unduly suggestive. The Second District found that it was not. Moody's suggestion that the State was bound constitutionally to use D.W. in the subsequent photospreads is not supported by Supreme Court precedent. When dealing with the failure of the state to preserve evidence which could have been subjected to tests which might have exonerated the defendant, there is no due process violation unless the defendant can show bad faith on the part of the police. *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). The facts do not support a finding of bad faith on the part of Detective Cope or even that such a claim was made to the Second District.

**Ground Two: Denial of Continuance**

In his Second Ground for Relief, Moody claims the trial court denied him a fair trial and infringed his right to trial by jury when it denied a motion for continuance based on late disclosure of *Brady* material. The Second District rejected this claim upon a showing that the evidence in question was disclosed before trial and that there was no motion for continuance made. *State v.*

*Moody, supra,* at ¶ 40. The Report accepted this finding of fact and also found the material was not *Brady* material at all because it was used to bolster the State's case (ECF No. 27, PageID 1630-31).

In his Objections, Moody admits that the evidence in question was in fact disclosed before trial and was used "to bolster the credibility of nearly every witness or to impeach the testimony of their own witnesses . . . ." (ECF No. 36, PageID 1666). He attempts to re-characterize this as a claim of prosecutorial misconduct for disclosing the evidence only two days before trial. *Id.* That claim was never presented to the state courts or even in the Petition here, so it is procedurally defaulted. *State v. Perry*, 10 Ohio St. 2d 175, syllabus (1967).

Concerning the claim actually made that denial of a continuance made the trial unfair (Objections, ECF No. 36, PageID 1666), Moody again fails to point to any place in the record where his attorney moved for a continuance, either orally or in writing. Moody's counsel did complain about the late disclosure of the cruiser cam photographs, but made no request for a continuance. Therefore, the Second District's finding that no such motion was made is entitled to deference.

Moody complains about the surprise involved in the late production and claims that demands for discovery were made. Aside from *Brady* material, however, there is no constitutional right to discovery in a criminal case. Moody complains that the photographs were never properly authenticated (Objections, ECF No. 36, PageID 1670-71). But that is a matter of Ohio evidence law, not federal constitutional law, which is the only basis on which a habeas court can grant relief.

The Magistrate Judge again concludes the Second Ground for Relief is without merit and should be dismissed.

**Ground Three: Trial Court Abuse of Discretion**

In his Third Ground for Relief, Moody claims the trial court abused its discretion in designating Zanetta White and Rhonda Alves as court witnesses. The Second District considered this claim as part of the Third Assignment of Error on direct appeal and found that (1) White was never designated as a court witness and (2) Alves, Moody's mother, was only designated a court witness after initial evasive testimony and it was not an abuse of discretion to designate her as a court witness. *State v. Moody, supra,* at ¶¶ 58, 62. The Report recommended dismissing Ground Three because the question of whether a trial judge abused her or his discretion is not a federal constitutional question (ECF No. 27, PageID 1632).

Moody argues his objections on Ground Three entirely in terms of abuse of discretion by the trial judge or trial court errors in applying the Ohio Rules of Evidence. But trial court abuse of discretion is not a federal constitutional violation. *Sinistaj v. Burt,* 66 F.3d 804, 808 (6th Cir. 1995). And the Ohio Rules of Evidence are not imposed on Ohio trial courts as a matter of federal constitutional law, so their violation does not in itself give rise to a federal constitutional claim.

The Magistrate Judge again recommends Moody's Third Ground for Relief should be dismissed.

**Ground Four: Hearsay**

In his Fourth Ground for Relief, Petitioner asserts that there were multiple instances of hearsay testimony admitted, some over objection and some to which his attorney did not object. The Report recommended dismissal of this claim because the United States Constitution does not

bar the admission of hearsay evidence, except when it violates the Confrontation Clause. (ECF No. 27, PageID 1632-33). Moody argues his objections to the Report purely in terms of Ohio evidence law (ECF No. 36, PageID 1682-84). He cites no Supreme Court precedent making any of the evidence he objects to inadmissible by virtue of the United States Constitution. Therefore, Ground Four should be dismissed.

**Ground Five: Fraud on the Court/Prosecutorial Misconduct**

Moody does not identify in his Petition what action or actions he claims constituted a "fraud on the court." However, in his Reply/Traverse Brief, he argues the Fifth Ground for Relief as one of prosecutorial misconduct (ECF No. 22, PageID 1589-1597). The Report noted that Moody had raised seven claims of prosecutorial misconduct in the Second District and quoted verbatim that court's disposition of those claims (ECF No. 27, PageID 1633-39). The Magistrate Judge declined to consider those claims because they were raised only in the Traverse, and Moody had not moved to amend his Petition (ECF No. 27, PageID 1640).

In his Objections, Moody repeats his seven claims of prosecutorial misconduct (ECF No. 36, PageID 1688). He then argues them at length (PageID 1688-96) without dealing with the Report's finding that these claims were never properly pleaded and the State therefore did not have an opportunity to respond.

Even if the Court were to treat the Petition was properly amended to plead these claims, Moody has made no showing that the Second District's disposition of these claims is an objectively unreasonable application of Supreme Court precedent. See, e.g., *State v. Moody, supra*, at ¶ 108, citing *Darden v. Wainwright,* 477 U.S. 168 (1986).

Ground Five should therefore be dismissed.

**Ground Six: Cumulative Error**

The Report recommended dismissing Moody's cumulative error ground because it had not been pleaded in the Petition (ECF No. 27, PageID 1641-42). The Objections do not speak to this point at all. The Report also noted that cumulative errors do not give rise to a constitutional claim. *Id.* at PageID 1642. Moody also does not respond to this point, but merely cites Ohio law allowing reversal for cumulative error (Objections, ECF No. 36, PageID 1696, citing *State v. Eicholtz*, 2nd Dist. Montgomery No. 2012-CA-7, 2013-Ohio-302 (Feb. 1, 2013); *State v. DeMoss*, 2nd Dist. Champaign No. 2001-CA-5, 2002 Ohio App. LEXIS 1023 (Mar. 8, 2002)).

**Fraud Upon the Court**

In his Sixth Ground for Relief as pleaded in the Petition and Eighth as argued in the Traverse Brief, Moody claims fraud on the court was committed by the introduction of a forged "autopsy examination report of entrance & exit wounds." (Traverse Brief, ECF No. 22, PageID 1604).

The Report concluded this claim should be dismissed because it was procedurally defaulted when it was not raised on direct appeal. Any claim that that default was excused by ineffective assistance of appellate counsel was itself defaulted when Moody filed his 26(B) application too late and the Second District held that default against him. Finally, Moody would fail on the merits if this Court reached them because the facts on which he relies do not show any fraud on the court

7

(ECF No. 27, PageID 1642-43).

In his Objections, Moody argues first that fraud occurred because the autopsy diagram in question bears the purported signature of Dr. Lee Lehman, but Dr. Lehman disclaimed preparing the diagram (Objections, ECF No. 36, PageID 1697). The Report rejected this argument, noting

> In his Traverse Brief, Moody quotes the portion of the transcript where the autopsy diagram, a defense exhibit, is being shown to Dr. Lehman by defense counsel Lachman. Lehman says he did not draw the diagram and repeatedly disavows its accuracy. Certainly Dr. Lehman committed no fraud on the court. Nor did the prosecution: this was a defense exhibit used in cross-examination by defense counsel. If defense counsel produced the diagram or had it drawn to use in cross-examination, he utterly failed to get Dr. Lehman to accept it as accurate.

(ECF No. 27, PageID 1643).

Examining the trial transcript, the Magistrate Judge finds the first mention of the diagram at page 317 (State Court Record, ECF No. 15-3, PageID 798). Defense counsel hands Dr. Lehman "what I've marked as Defendant's Exhibit A for identification." *Id.* Lehman testifies he did not draw the diagram and has never seen it before. *Id.* at PageID 799. He testifies the diagram is "totally wrong." *Id.* He admits that his name, not his signature, is at the bottom of the diagram, and interprets that as someone else reporting he was the doctor who did the autopsy. *Id.* On re-direct examination by the prosecutor, Dr. Lehman repeated that he did not create Defense Exhibit A and had never seen it before. *Id.* at PageID 803. He again testified that whoever created it, it was inaccurate. *Id.* at PageID 804. Although the diagram had been marked as a defense exhibit, it was not admitted in evidence or even offered for admission. *Id.* at PageID 760, 798-99.

In sum, there is no evidence that Dr. Lehman's purported signature, as compared with his name, appears on the diagram. The prosecutor did not use the diagram to attempt to mislead the court or jury. On the contrary, the prosecutor was thorough in showing the diagram was not made

by Dr. Lehman and was not accurate. Defense counsel apparently believed the diagram was accurate, but Dr. Lehman, who performed the autopsy, strongly disagreed. Thus, on the merits the Magistrate Judge finds there was no fraud or attempted fraud on the court.

In his Objections, Moody makes a number of statements about ineffective assistance of counsel, although it is not clear which of his attorneys he is claiming was ineffective (ECF No. 36, PageID 1698-99). His trial counsel backed away for the diagram and did not attempt to introduce it in evidence once Dr. Lehman disclaimed it. That was hardly ineffective assistance of trial counsel. His appellate attorney did not raise any claim about the diagram. Since there was no trial court error about the diagram, it would have been futile to raise the claim on appeal. But even if it had been a good claim, Moody has done nothing to excuse his procedural default in presenting a claim of ineffective assistance of appellate counsel by waiting too long to file his 26(B) Application.

It is therefore again respectfully recommended that Moody's Fraud on the Court claim be dismissed.

**Ground Six/Seven:** *Ex Parte* **Communications**

In the Petition Moody claimed the trial judge permitted *ex parte* communications in violation of his Fifth and Sixth Amendment rights. In his Traverse, Moody had supported this claim with a lengthy quotation from an in-chambers conference that the trial judge conducted with counsel about the appropriate response to a jury note (ECF No. 22, PageID 1599-1601).

The Report concluded the conference was not *ex parte* because counsel for both sides were present (ECF No. 27, PageID 1641). In addition, the claim was found procedurally defaulted by

failure to raise it on direct appeal. *Id.*

Moody objects by quoting without citation a standard method for dealing with jury questions (Objections, ECF No. 36, PageID 1700). He asserts the trial court violated his constitutional rights by not making the juror note as a court exhibit and reading it into the record. *Id*. at PageID 1701, citing *United States v. Bustamante,* 805 F. 2d 201, 203 (6th Cir. 1986). *Bustamante* did hold that a response to a jury note should be in open court with counsel for both parties present. However, it upheld the conviction and did not even suggest that this rule had been imposed upon the States by the Supreme Court. *Bustamante*, 805 F.2d at 203.

Moody next objects that he was not personally present for the court's response to the jury question and claims, for the first time in this case, that this violated his right to be personally present at all critical stages of the case (Objections, ECF No. 36, PageID 1701, citing *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)). A defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to the outcome if his presence would contribute to the fairness of the procedure, i.e., be useful in ensuring a more reliable determination. *Buell v. Mitchell*, 274 F.3d 337, 363 (6th Cir. 2001), *citing Stincer*, 482 U.S. at 745. Moody has not begun to suggest any way in which his presence at this in-chambers conference could have contributed to the fairness of the proceedings. Moreover, any claim that it was error not to have him present is procedurally defaulted by his failure to raise it on direct appeal.

Moody also objects to the actual response of the trial court to the jury request by playing certain portions of the jail calls (Objections, ECF No. 36, PageID 1701-03). That objection is waived by the fact that his attorney agreed to the response. *Id*. at 1702. If the response was in error or it was ineffective assistance of trial counsel for his attorney to agree to it, that claim is procedurally defaulted because it was not raised on direct appeal. Finally, for the reasons given as

10

to the prosecutorial misconduct claims, a new constitutional claim cannot be introduced into a habeas case in objections to a report and recommendations on the merits.

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again respectfully recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

February 8, 2019.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).