# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

CURTIS MOODY,

|  |  |  |  |
|---|---|---|---|
| | Petitioner, | : | Case No. 3:18-cv-139 |
| - vs - | | | District Judge Walter H. Rice |
| | | | Magistrate Judge Michael R. Merz |
| TOM SCHWEITZER, Warden, | | | |
| Lebanon Correctional Institution | | | |
| | | : | |
| | Respondent. | | |

---

## SUBSTITUTED REPORT AND RECOMMENDATIONS

---

This habeas corpus case, brought *pro se* by Petitioner Curtis Moody, is before the Court on Petitioner's Objections (ECF No. 59) to the Magistrate Judge's Report and Recommendations (ECF No. 56) recommending Petitioner's Motion for Relief from Judgment (ECF No. 55) be denied. District Judge Rice has recommitted the case for further consideration of Petitioner's Motion (ECF No. 61). In lieu of a supplemental Report, the Magistrate Judge includes all of his proposed findings and conclusion in this Substituted Report.

On May 18, 2020, Judge Rice dismissed this case (Decision and Entry, ECF No. 46). Regarding Petitioner's claim of prosecutorial misconduct/fraud on the court, he held:

> As previously noted, Moody's claim of fraud on the court was originally pled as the Fifth Ground for Relief. This claim is based on the introduction of an autopsy diagram allegedly showing Mr. Farr's entrance and exit wounds. At trial, the chief deputy coroner testified that he did not prepare the document and had never seen it.
>
> Magistrate Judge Merz properly found that this claim is procedurally defaulted. It also fails on the merits. The exhibit was not introduced by the prosecution, but rather by Moody's own

1

> attorney on cross-examination, and the chief deputy coroner insisted
> that it was inaccurate. These circumstances simply do not support a
> claim of fraud on the court.

*Id.* at PageID 1765.  Both this Court and the Sixth Circuit Court of Appeals refused to issue a

certificate of appealability, finding reasonable jurists would not disagree with the dismissal (ECF

No. 52).  The Supreme Court of the United States then denied Moody's petition for a writ of

certiorari on January 19, 2021 (ECF No. ECF No. 54).

Moody filed the instant Motion of September 22, 2021, captioned Motion for Leave to

Present Newly Discovered Evidence (ECF No. 55).  The Motion purports to be brought under

Fed.R.Civ.P. 60(b)(1), 60(b)(2), and 60(d)(3). *Id.* at PageID 1804.  Moody asserts

> [T]he petitioner has obtained funds to hire his own handwriting
> expert to prove that his pervious [sic] claim of fraud upon the court
> was in fact truth and did happen during the trial held in Montgomery
> county common pleas courts by way of introduction of "autopsy
> diagram report" presented by an officer of the court in which was an
> Dayton police officer Thomas cope which was the lead detective
> involved in the case of "STATE OF OHIO -VS- CURTIS MOODY.

*Id.*  Petitioner reports that in April 2021 he hired questioned documents examiner Curt Baggett

who reported to him in June 2021, that the purported signature of the deputy coroner on an autopsy

diagram had been forged by Police Officer Thomas Cope.  Moody requests this Court, on the basis

of this evidence, to order a new trial.


**The Proffered Newly-Discovered Evidence**


Moody attaches to his Motion:

1.    Moody's own Affidavit of September 7, 2021, purporting to authenticate (1) the autopsy

diagram on which Officer Cope is alleged to have forged Dr. Lehman's signature and (2) "Miami

Valley Regional Crime Laboratory Report #14-007516 which Mr. Cope generated this report where an analysis could be performed to establish his handwriting" (PageID 1814).

2.      Moody's Affidavit of September 16, 2016, calling this issue to the attention of his appellate attorney (PageID 1815-16).

3.      The June 3, 2021, report of Curt Baggett (ECF No. 55-3) which includes the allegedly forged document at PageID 1820 (labeled QDE Ex. Q1) and the comparator document at PageID 1821 (labeled QD Ex. TCK1).

4.      Baggett's twenty-five page curriculum vitae (ECF No. 55-4).

Baggett states his opinion thus:

> I have examined one (1) document with the purportedly known printed handwriting of Thomas J. Cope. For the purpose of this examination I have labeled this exhibit 'TCK1'.
>
> Today I have compared the printed handwriting of Thomas J. Cope on the 'TCK1' document to the printed handwriting on the questioned document, identified herein as 'Ql', to determine if the author of the Thomas J. Cope printed handwriting on the TCK1' document was the same person who authored the printed handwriting on the questioned document: **Autopsy diagram of Jeffrey Farr (deceased) with the printed handwriting on front and back views of body.**
>
> * * *
>
> Based upon thorough analysis of these items, and from an application of accepted forensic document examination tools, principles and techniques, it is my professional expert opinion that **it is highly likely that Thomas J. Cope authored the printed handwriting on the questioned document. Thomas J. Cope did print the handwriting on the questioned document, (Q1'.**

(ECF No. 55-3, PageID 1817-19; emphasis in original).

Taken at face value (i.e. without formal proof in open court and under cross-examination), Baggett's report shows that Dayton Police Officer Thomas J. Cope hand-printed his name on

TCKN1 and hand-printed the name of Dr. Lehman on Q1. Neither of these hand-printed names purports to be a signature: they are not in cursive and they are not inserted in any space calling for a signature. Officer Cope's name is in fact hand printed twice on TCKN1, once in a space labeled "Investigating Officer" and once in a space labeled "Submitting Officer." For purposes of this Substituted Report, Mr. Baggett's conclusion is accepted.

## Legal Standards

Moody purports to brings his Motion under Fed.R.Civ.P. 60(b)(2), 60(b)(3), and 60(d)(3). Fed.R.Civ.P. 60(b) provides:

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed.R.Civ.P. 60(d) provides:

> (d) Other Powers to Grant Relief. This rule does not limit a court's power to:

> (1) entertain an independent action to relieve a party from a judgment, order, or proceeding;
>
> (2) grant relief under 28 U.S.C. §1655 to a defendant who was not personally notified of the action; or
>
> (3) set aside a judgment for fraud on the court.

The Sixth Circuit has set out the elements of fraud on the court as follows:

> Fraud on the court consists of conduct: "1) on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard of the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court." *Carter [v. Anderson],* 585 F.3d [1007] at 1011 (citing *Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993)). Petitioner has the burden of proving existence of fraud on the court by clear and convincing evidence. Id. at 1011-12 (citing *Info-Hold, Inc. v. Sound Merch., Inc*., 538 F.3d 448, 454 (6th Cir. 2008)).

*Johnson v. Bell*, 605 F.3d 333 (6th Cir. 2010).

# Analysis

## Claims under Fed.R.Civ.P. 60(b)(2) and 60(b)(3) are Untimely

Moody's first two bases for relief are Fed.R.Civ.P. 60(b)(2) and (3). Judgment dismissing Moody's habeas corpus petition was entered May 18, 2020 (ECF No. 47). Fed.R.Civ.P. 60(c)(1) provides "(1) *Timing*. A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Although it was not docketed until September 22, 2021, Moody represents that he deposited his Motion in the prison mailing system on September 5, 2021 (ECF No. 55-1, PageID 1813). September 5 thus counts as the date of filing. *Houston v. Lack,* 487 U.S. 266 (1988); *Cook*

*v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Considered under Fed.R.Civ.P. 60(b)(2) or 60(b)(3), Moody's Motion was more than three months late. The one-year time limit on a 60(b) motion is jurisdictional. *Arrieta v. Battaglia*, 461 F.3d 861, 864 (7th Cir. 2006), cited with approval in *Mitchell v. Rees II,* 261 Fed. Appx. 825, 2008 U.S. App. LEXIS 927 (6th Cir. 2008). Thus Moody's claim as it is pleaded under Fed.R.Civ.P. 60(b)(2) or (3) must be denied for lack of jurisdiction.

**Claim Under Fed.R.Civ.P. 60(d)(3)**

**Timeliness**

Moody claims "A request for Rule (d)(3) Relief is not subject to any time limitation" (Motion ECF No. 55-1, PageID 1810, citing *Rozier v. Ford Motor Co.,* 573 F.2d 1332 1337-38 5th Cir. 1978. *Rozier* is not directly in point, because it arose under Rule 60(b)(3), but in the course of deciding the case, the Fifth Circuit adverted to the distinction between a motion under 60(b)(3) and a motion for relief claiming fraud  on the court under the "saving" clause or Rule 60(d). 573 F. 2d at 1338, notes 1 and 2. It held "[t]he distinction between a 60(b)(3) motion and a motion alleging fraud upon the court is rooted in policies basic to the law of judgments, as the Supreme Court explained prior to the 1946 revision of Rule 60:

> Federal courts . . . long ago established the general rule that they would not alter or set aside their judgments after the expiration of the term at which the judgments were finally entered. This salutary general rule springs from the belief that in most instances society is best served by putting an end to litigation after a case has been tried and judgment entered. . . . From the beginning there has existed along side the term rule a rule of equity to the effect that under certain circumstances, one of which is after-discovered fraud, relief will be granted against the judgments regardless of the term of their entry.

*Id.* at note 3, quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. at 244. Based on

this authority, the Magistrate Judge finds Moody's Rule 60(d)(3) Motion is timely.


**Procedural Default**

This claim for relief is procedurally defaulted. As the undersigned wrote in the Report and

Recommendations on the merits:

> As Moody states in his Petition, he raised this claim for the first time
> in his original Application for Reopening the direct appeal under
> Ohio R. App. P. 26(B)(ECF No. 1, PageID 9). Moody's Application
> was untimely, filed well outside the ninety days allowed for such an
> application after the court of appeals entered judgment. The Second
> District denied the application on this basis. *State v. Moody*, Case
> No. CA26926 (2nd Dist. Jul. 25, 2017)(copy at State Court Record,
> ECF No. 15, Ex. 41, PageID 432).

(ECF No. ECF No. 27, PageID 1642-43, adopted at ECF No. 46, PageID 1765). Moody attempts

to overcome this default by showing that he wrote to his appellate attorney September 27, 2016,

asking her to include this claim in his direct appeal. She did not do so (See Appellant's Brief,

State Court Record ECF No. 15, Ex. 16). If it had been ineffective assistance of appellate counsel

to fail to include the claim, that would excuse the default. But the sole method of raising an

ineffective assistance of appellate counsel claim in Ohio is by filing an application for reopening

under Ohio R. App. P. 26(B) and the ineffective assistance of appellate counsel claim can be

forfeited by failing to properly file the 26(B) application. *Edwards v. Carpenter*, 529 U.S. 446

(2000). That is what happened here: Moody filed his 26(B) Application outside the ninety-day

time limit and the Second District denied the Application on that basis. Moody's Motion should

be denied because the underlying fraud on the court claim is procedurally defaulted and the default

is not excused.

**Merits**

Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).  Thus in order to obtain a writ of habeas corpus on grounds of "fraud on the court," a habeas petitioner would have to show that the criminal judgment under which he was incarcerated was procured by fraud, thus depriving him of a fair trial and due process of law.  Such claims are usually litigated as claims of prosecutorial misconduct, particularly the intentional presentation of evidence known to be false.  The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with the rudimentary demands of justice." *Workman v. Bell,* 178 F.3d 759, 766 (6th Cir. 1998), *quoting Giglio v. United States*, 405 U.S. 150, 153 (1972).  This rule applies to both the solicitation of false testimony and the knowing acquiescence in false testimony. *Workman v. Bell*,  178 F.3d 759, 766 (6th Cir. 1998), *citing Napue v. Illinois*, 360 U.S. 264, 269 (1959). Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court. See *Hazel-Atlas Glass, supra; Root Refin. Co. v. Universal Oil Products,* 169 F2d 514 (3rd Cir. 1948); 7 J. Moore, Federal Practice, P 60.33 at 510-11.

This is the claim Moody appears to be making in this case.  He asserts Dayton Police Officer Thomas Cope has committed the felony offenses of forgery, obstructing justice, and tampering with evidence (Motion, ECF No. 55-1, PageID 1809).  But as with all serious crimes in Ohio, these crimes are committed only when the offender acts with a guilty purpose.  Indeed, fraud on the court requires conduct

8

> (1) On the part of an officer of the court;
> (2) That is directed to the "judicial machinery" itself;
> (3) That is intentionally false, wilfully blind to the truth, or is in reckless disregard for the truth;
> (4) That is a positive averment or is concealment when one is under a duty to disclose;
> (5) That deceives the court.

*Demjanjuk, supra.* Moody has completely failed to meet these elements. First of all, police officers are not in general officers of the court, except perhaps when executing a search or arrest warrant.

Second, Cope could reasonably have assumed that the Autopsy Diagram would be in the prosecutor's file and that the prosecutor would produce it in discovery because of *Brady v. Maryland*, 373 U.S. 83 (1963), and the broad discovery policy of the Montgomery County Court of Common Pleas. But he did not present it to the Court as a witness. Rather he provided it to the prosecutor who produced it in discovery and the prosecutor never represented to the court that it had been drawn by Doctor Lenehan.

Third, Moody has not shown the Autopsy Diagram is "false." It contains Dr. Lenehan's name printed by Cope, but that does not constitute a representation by Cope that Lenehan drew it. As noted above, Lenehan's name is hand printed on the diagram, not signed. A signature is a way of attesting that the signer authenticates or vouches for the content of the signed document. On the other hand, a hand-printed name is merely an indication of a connection between the named person and the content of the document, in this case that Dr. Lenehan was the physician who performed the autopsy. There is no doubt Dr. Lenehan performed the autopsy and thus no falsehood involved in associating him with the diagram.

Closely associated is the failure to Moody to show any "positive averment" by Detective Cope about the diagram. Moody cites no testimony by Cope that Lenehan drew the diagram or

put his name on it. Nor is there concealment when Cope had a duty to disclosed:  Moody cites no testimony that Cope denied drawing the diagram or putting Lenehan's name on it.

Finally, there is no proof any court was deceived by anything Cope did.  All the courts that have been involved in this case have found that the diagram was not introduced by the State, but rather was marked as an exhibit by defense counsel who used it to cross-examine Dr. Lenehan who promptly disavowed any knowledge of it.

Mr. Baggett's Report is indeed new evidence in the sense that it was not available at trial or when this § 2254 case was filed or decided.  But all it proves is that Thomas Cope probably wrote Dr. Lenehan's name on the Autopsy Diagram.  Because no court (or the jury) was asked to believe Lenehan signed the diagram and in fact he denied it, the fact that Lenehan's name was printed on the document by Cope is immaterial.

Because Moody has proved none of the elements of fraud on the court, his Motion fails on the merits and should be denied on that basis.


**Conclusion**


Petitioner's Motion for Relief from Judgment should be dismissed for lack of jurisdiction insofar as it is made under Fed.R.Civ.P. 60(b)(2) or (3).  To the extent it is made under Fed.R.Civ.P. 60(d)(3), it is timely but should be denied because it is both procedurally defaulted and without merit.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to

proceed *in forma pauperis*.


 October 25, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #